The Honorable Morril Harriman, Chair Legislative Joint Auditing Committee 172 State Capitol Little Rock, Arkansas 72201-1099
Dear Senator Harriman:
This opinion is being issued in response to your recent questions regarding the transfer of a municipal judge from a local municipal retirement system to the Arkansas Public Employees' Retirement System (APERS). You indicate that the City of Clinton, Arkansas transferred its municipal judge from its local retirement system to APERS pursuant to A.C.A. § 24-8-315(f), and that upon transfer, the city purchased credited service time for the judge. The funds for this purchase were transferred from the local municipal judges' and clerks' retirement system to the city's general fund, and were subsequently paid to APERS.
In connection with the above-described scenario, you have presented the following questions:
 (1) May a city pay for the purchase of a municipal judge's credited service upon transfer from a local municipal judges' and clerks' retirement system to APERS?
 (2) If the answer to Question 1 is affirmative, can this payment be made from a local municipal judges' and clerks' retirement system?
RESPONSE
Question 1 — May a city pay for the purchase of a municipal judge'scredited service upon transfer from a local municipal judges' and clerks'retirement system to APERS?
It is my opinion that a city may pay for the purchase of a municipal judge's credited service in APERS, if such a payment is not prohibited by any of the city's ordinances, and if the payment has been duly authorized in accordance with the city's procedures.
A city would only be prohibited from making such a payment if the act of doing so were prohibited by state law or by city ordinance. This type of payment is not prohibited by state law.
First, the provisions of state law that allow for the purchase of credited service in APERS do not prohibit such a payment by cities. These provisions typically require that payments be made for the purpose of making up contributions that would have been made by the member (employee) and by the employer, respectively, during the time period for which credit is being purchased, if the employee had been a member during that time period (plus interest). See, e.g., A.C.A. § 24-8-312(c)(2)(E); A.C.A. § 24-4-304; A.C.A. § 24-4-739(e). Although some of these provisions do refer to "the member" making these payments, the provisions do not set forth any requirements or restrictions as to the source of funds used for payment of these required amounts.
Second, the provisions of state law governing cities do not prohibit a payment of this nature. Although state law does explicitly specify the subject of retirement pensions as being "state affairs" rather than municipal affairs," it goes on to authorize cities to act upon such state affairs as long as the cities' acts with regard to such matters do not conflict with state law on the same subject. See A.C.A. § 14-43-601.[1]
Therefore, because a city's purchase of credited service in APERS for its municipal judge does not conflict with any state law, I must conclude that such a purchase is permissible, if it is not prohibited by city ordinance. As always, the city's act of making such a purchase must be carried out in accordance with the city's procedures.
Question 2 — If the answer to Question 1 is affirmative, can this paymentbe made from a local municipal judges' and clerks' retirement system?
It is my opinion that the answer to this question will depend upon the rules that have been promulgated by the governing body of the particular local system. For example, local municipal judges' and clerks' retirement systems that are created pursuant to the provisions of A.C.A. § 24-8-301et seq. are governed by a board of trustees. The statute creating the board states: "The board shall receive and administer the funds collected under the provisions of this subchapter and shall have the power to make necessary rules therefor." A.C.A. § 24-8-302(b). Similarly, a local plan created pursuant to A.C.A. § 24-12-101 et seq. is also governed by a board of trustees. The statute creating that board states:
 (b) The board shall have absolute control and management of the funds provided for in this act and of all moneys donated, paid, or assessed for the relief or pension of disabled, superannuated, and retired paid nonuniformed employees, their surviving spouses, and minor children under the age of sixteen (16) years, or surviving parent solely dependent upon the employee for support.
 (c)(1) The board shall make all necessary rules and regulations for its government and the discharge of its duties. . . .
A.C.A. § 24-12-105(b) (c)(1).
Local plans that exist pursuant to A.C.A. § 14-42-116 are governed by the municipality's governing body, which for the reasons stated in the response to Question 1, would have authority to determine the proper use of the plan's funds.
It should be noted that the funds of plans created pursuant to A.C.A. §24-12-101 et seq. are restricted to use only for the purpose of "pensioning" the persons covered by those statutory sections. See A.C.A. § 24-12-114(b).[2] This restriction does not, in my opinion, preclude the use of monies in such funds for the purpose of purchasing credited service time in APERS. This use of the monies in the fund would constitute "pensioning" the covered persons. My conclusion in this regard is supported by the fact the statutes governing this type of plan provide for those who are covered to elect to participate in APERS, rather than in the local plan. Nevertheless, the board administering such a local plan may have enacted rules going beyond the state law restriction, thus precluding other uses of the funds.
I therefore conclude that whether or not a local retirement plan's funds can be used to purchase credited service in APERS is a matter that would be governed by the rules enacted by that plan's governing body.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Although A.C.A. § 14-43-601 is set forth in the chapters of the code governing cities of the first class, it is my opinion that it is appropriate to consider the provisions of this statute in determining matters concerning cities and towns of other classes. See Conner v.Burnett, 216 Ark. 559, 226 S.W.2d 984 (1950); Op. Att'y Gen. No.95-367.
[2] Local plans created pursuant to A.C.A. § 24-8-301 et seq. were previously similarly restricted by language set forth in A.C.A. §24-8-303(c) (restricting the use of the fund to the provisions of retirement benefits for covered persons), which was repealed by Acts 1995, No. 1256, § 20. Prior to the repeal of that section, I opined that monies in a local fund created pursuant to A.C.A. § 24-8-301 et seq.
could not be transferred to a general fund in a situation where all current employees had transferred to APERS. The opinion was based upon the restriction set forth in A.C.A. § 24-8-303(c). That is, in such a situation, the funds would clearly be used for purposes other than the provision of retirement benefits, in violation of § 303. I opined there that future employees might elect to be covered by the local plan. It is my opinion, for the reasons stated in the main text of this opinion, that even if the restriction of § 303 still existed, monies in a fund created pursuant to A.C.A. § 24-8-301 et seq. could be used to purchase credited service time in APERS, such a use of the fund constituting the provision of retirement benefits for covered persons.